IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY JACKSON,<br><br>                 Plaintiff,<br><br>    v.<br>NANCY A. BERRYHILL<br>Acting Commissioner of the Social Security<br>Administration,<br><br>                 Defendant. | CIVIL ACTION<br>NO. 17-3870 |

## OPINION

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　February 6, 2019

## I.　　INTRODUCTION

Before the Court are the Objections of Plaintiff Terry Jackson to the Report and Recommendation ("R&R") of United States Magistrate Judge Linda K. Caracappa. (Doc. No. 23.) On August 28, 2017, Plaintiff initiated this action by filing a Motion for Leave to Proceed in Forma Pauperis. (Doc. No. 1.) On August 31, 2017, Plaintiff filed a Complaint against Defendant Nancy A. Berryhill ("Defendant"), Acting Commissioner of the Social Security Administration, alleging that Defendant wrongfully denied him Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Doc. No. 3.) On March 20, 2018, the Court referred the case to Magistrate Judge Caracappa for an R&R. (Doc. No. 17.) On November 28, 2018, Magistrate Judge Caracappa issued the R&R, recommending that Plaintiff's request for review be denied. (Doc. No. 20.) Then, on December 12, 2018, Plaintiff filed an unopposed Motion for an Extension of Time to File Objections to the R&R (Doc. No. 21), which the Court granted (Doc. No. 22.) Thereafter, on

December 19, 2018, Plaintiff filed Objections to the R&R (Doc. No. 23), to which Defendant filed a Response on January 2, 2019 (Doc. No. 24).

Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the portions of the R&R to which objections have been made. After an independent review of the record and for reasons that follow, the Court will overrule Plaintiff's Objections (Doc. No. 23) and adopt the R&R (Doc. No. 20) in its entirety.

## II. BACKGROUND

### A. Factual and Procedural Background

Plaintiff Terry Jackson, a forty-three year old man, was born on October 4, 1974. (Administrative Record ("R.") at 169.) He has a high school education, three years of college, and past relevant work as an electronics mechanic. (R. at 31.)

On December 11, 2013, Plaintiff filed an application for DIB, and on December 12, 2013, he filed a separate application for SSI. In his applications, he claimed that since March 15, 2007, he suffered from back pain, insomnia, anxiety, and depression. His claim was denied on May 21, 2014, and he thereafter filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 22.)

On February 22, 2016, ALJ Christine McCafferty held a hearing and heard testimony from Plaintiff, who was represented by counsel. Additionally, the ALJ heard from Christine Slusarksi, an impartial vocational expert. (R. at 122.) On March 31, 2016, the ALJ issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that he was not entitled to DIB or SSI. (R. at 19.) After the ALJ's decision, Plaintiff appealed her findings. On June 23, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (R. at 1-6.)

## B. Relevant Social Security Administration Regulations

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). If he does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, he is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment

> to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

Id. § 404.1520(a)(4)(i)–(v).

At the third step, the Social Security Administration determines whether the claimant's medical impairment meets or equals one of the Listings in Appendix 1 of 20 C.F.R. Part 404, Subpart P. § 404.1520(a)(4)(iii). Relevant here, Listing 1.04 refers to disorders of the spine and Listing 12.04 pertains to depressive, bipolar and related disorders. 20 C.F.R. Pt. 404, Subpt. P. App. 1 (2015). Each listing contains a statement describing the disorders and certain criteria that must be met in order for the Administration to find that the claimant is disabled. Id.

Paragraph A of each listing provides criteria that are necessary to medically substantiate the presence of an impairment. These include medical symptoms, signs, and laboratory results. Id. Paragraph B of each listing provides criteria that are necessary to determine whether impairment-related limitations impact the claimant's ability to perform gainful activity. Id. At the time of the ALJ's decision in this case, the claimant's mental impairment needed to satisfy at least two of the following Paragraph B criteria: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within one (1) year, or an average of once every four months. Id.

Between the third and fourth steps of the evaluation process, the Social Security Administration assesses a claimant's residual functional capacity, which is the "the most [a claimant] can do despite [his] limitations." § 404.1545(a)(1). The Administration uses the residual

functional capacity assessment to determine at the fourth step whether the claimant is able to do his "past relevant work." § 404.1545(a)(5)(i)

When determining residual functional capacity, the Administration considers "all the relevant evidence in your case record . . . including [a claimant's] medically determinable impairments that are not 'severe.'" § 404.1545(a)(1-2). According to the regulations, the Administration "will consider whether your statements and the statements from third parties are consistent with the medical and other evidence we have." 20 C.F.R. Part 404, Subpart P, App. 1 § 12(C)(3).

**C. The ALJ's Findings**

In a decision issued on March 31, 2016, the ALJ applied the Social Security Administration's five-step evaluation and determined that Plaintiff was not disabled as defined by the Social Security Act. (R. at 22.) The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2. The issue of whether the claimant has engaged in substantial gainful activity since March 15, 2007, the alleged onset date, is deferred (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. Since March 15, 2007, the claimant has the following severe impairments: back disorder; and mood/affective disorder (20 CFR 404.1520(c) and 416.920(c)).

4. Since March 15, 2007, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that since March 15, 2007, the claimant has the residual functioning capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: lift up to 10 pounds; sit for 6 hours; stand and/or walk for 2 hours; occasional postural activities; no pushing or pulling with the lower extremities; no overhead reaching; and limited to simple repetitive tasks with only occasional changes in work setting.

5

6. Since March 15, 2007, the claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 4, 1974, and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (30 CFR 404.1564 and 416.964).

9. The claimant has no transferable job skills (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform since March 15, 2007 (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act from March 15, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 24-32.) As a result, the ALJ held that Plaintiff was not entitled to DIB or SSI.

## III. STANDARD OF REVIEW

When reviewing a final decision of the Commissioner of Social Security, a court must determine whether the record demonstrates substantial evidence to support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla ... [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 Fed.Appx 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Because the Commissioner adopts an ALJ's decision as her findings of fact, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see also 42 U.S.C. § 405(b)(1). An ALJ must consider, evaluate, and refer to specific medical evidence in the record in his decision. See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d

Cir. 2003). Based on this evidence, an ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as her finding of fact. Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless the ALJ's finding is not supported by substantial evidence. Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

IV. ANALYSIS

Plaintiff makes two Objections to the Magistrate Judge's Report and Recommendation. (Doc. No. 23.) First, Plaintiff contends that the Magistrate Judge erred by finding (1) that the ALJ correctly assessed Plaintiff's residual functional capacity, and (2) that the ALJ's question to the vocational expert was proper. (Id. at 3.) Second, Plaintiff argues that the Magistrate Judge erred in holding that the ALJ properly considered the opinion of Kathleen Mullin, M.D., a consultative medical examiner. (Id. at 5.) The Court will address each Objection in turn.

**A. The Court will Overrule Plaintiff's First Objection**

In his first Objection, Plaintiff makes two distinct arguments: (1) that the Magistrate Judge erred by finding that the ALJ correctly assessed Plaintiff's residual functional capacity; and (2) that the Magistrate Judge erred by concluding that the ALJ's question to the vocational expert was adequate. (Doc. No. 23 at 3-5.) Both arguments are unavailing.

**1. The Magistrate Judge did not Err in Concluding that the ALJ Properly Assessed Plaintiff's Residual Functional Capacity**

Plaintiff argues that the Magistrate Judge's finding that the ALJ properly assessed his residual functional capacity violates the law. Specifically, Plaintiff contends that the R&R failed to recognize that the ALJ did not account for Plaintiff's "moderate difficulties in concentration, persistence, and pace at [s]tep [t]wo" when assessing residual functional capacity. (Id. at 3.) The Court disagrees.

7

As noted above, at step two of the Social Security Administration's five-step evaluation, the Administration considers the severity of the claimant's impairments. An impairment is considered severe if it significantly limits an individual's ability to perform basic work activities. Conversely, an impairment is not severe when evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521. If the impairment is not sufficiently severe under the Administration's regulations, the claimant is not considered disabled. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant's impairment is deemed severe, the analysis proceeds to the third step.

Here, the ALJ concluded that Plaintiff "has the following severe impairments: back disorder; and mood/affective disorder" and found that these impairments significantly limited his ability to perform basic work activities. (R. at 24-25.) Thus, the ALJ proceeded to the third step.

At the third step, the ALJ evaluates whether the claimant's impairment is so severe that it meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment meets or medically equals the criteria of a Listing in Appendix 1, the claimant is considered disabled. If the impairment does not meet or medically equal a Listing in Appendix 1, the ALJ proceeds to the fourth step.

In this case, at the third step, the ALJ found that neither Plaintiff's back disorder nor his mood/anxiety disorder were sufficiently severe so as to meet or medically equal a Listing in Appendix 1. (R. at 25-26.) With regard to Plaintiff's mood/anxiety disorder, the ALJ found that this mental impairment did not meet or medically equal Listing 12.04. In so concluding, she explained the following:

> The severity of claimant's mental impairment does not meet or medically equal the criteria of listing 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy "paragraph B" criteria, the mental impairment must result in at least two of the following: marked

8

> restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate, but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

(R. at 25.)

After examining the credible, objective evidence in the record, the ALJ concluded that Plaintiff's mood/anxiety disorder did not satisfy the paragraph B criteria—he did not have marked restrictions or limitations in a single category. Relevant here, the ALJ found that Plaintiff has only moderate difficulties maintaining concentration, persistence, or pace. (R. at 25.) Because the ALJ determined that Plaintiff's impairments did not meet or medically equal a Listing in Appendix 1, she proceeded to step four.

As explained earlier, between steps three and four of the Social Security Administration's five-step evaluation process, the Administration assesses a claimant's residual functional capacity, which is the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a)(1). The Administration uses a claimant's residual functional capacity to evaluate whether the claimant can perform his past relevant work. § 404.1545(a)(5)(I). To make a residual functional capacity assessment, an ALJ must first consider the claimant's symptoms and the extent to which the symptoms are consistent with credible medical evidence. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's ability to function. (R. at 26-27.) In determining a claimant's residual functional capacity, an ALJ is only required to consider limitations supported by credible evidence. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

Here, after considering Plaintiff's limitations as described in steps two and three, the ALJ found that Plaintiff's impairments could cause his symptoms. However, she also found that

Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical record. As a result, the ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work, with the following limitations: (1) he can lift up to ten pounds; (2) he can only sit for six hours; (3) he can only stand or walk for two hours; (4) he can occasionally engage in postural activities; (5) he cannot push or pull with his lower extremities; (6) he cannot reach over his head; and (7) he is limited to simple, repetitive tasks with only occasional changes in the work setting. (R. at 26.)

Plaintiff claims that the ALJ's residual functional capacity assessment failed to account for the fact that he has moderate difficulties maintaining concentration, persistence, or pace. (Doc. No. 23 at 3.) He also argues that the ALJ did not adequately explain her decision to not consider these difficulties. The Magistrate Judge was not persuaded by this argument. (Doc. No. 20 at 12-13.) Nor is the Court.

As an initial matter, the ALJ did in fact account for Plaintiff's moderate difficulties maintaining concentration, persistence, and pace when making the residual functional capacity assessment. Although she found that Plaintiff could perform sedentary work, she also noted his mental impairments necessitated employment that involves simple, repetitive tasks, with only occasional changes in the work setting. (R. at 26.)

Plaintiff contends that this limitation does not adequately respond to the severity of his symptoms. But when making a residual functional capacity assessment, the ALJ is only required to consider credible impairments. Here, the ALJ considered the fact that Plaintiff has moderate difficulties maintaining concentration, persistence, and pace, but also noted that the Plaintiff's statements regarding the severity of his symptoms contradicted medical evidence. As a result, when making the residual functional capacity assessment, the ALJ considered the objective

medical record, and not Plaintiff's subjective, unsubstantiated complaints. Her decision recounts this objective medical evidence:

> On April 25, 2014, following a consultative psychological examination, Nicholas Patapis, Psy.D., diagnosed major depressive disorder, recurrent episodes, current episode moderate. Dr. Patapis stated that the claimant's demeanor was friendly and cooperative. He stated that the claimant related well to the evaluator, demonstrated good social skills, and overall presentation was adequate. Dr. Patapis reported that attention and concentration were intact, recent and remote memory skills were intact, intellectual functioning was average, thought processes were coherent and goal directed, and that the claimant had good insight and fair judgment. In a medical source statement, Dr. Patapis indicated that the ability to understand, remember, and carry out instructions is not affected by the impairment. He also indicated that the ability to interact appropriately with supervisors, co-workers, and the public, as well as to respond to changes in the routine work setting is not affected by the impairment.
>
> On May 2, 2014, following a review of the record, a State agency psychologist, Roger Fretz, Ph.D., diagnosed affective disorders and provided that it is a nonsevere impairment. In a psychiatric review technique form, the State agency psychologist indicated that the claimant has no restriction of activities of daily living, mild difficulties in maintaining social functioning, and no difficulties in maintaining concentration, persistence, or pace. It was also indicated that the claimant does not have repeated episodes of decompensation, each of extended duration. The State agency psychologist noted that the claimant is not in treatment, reported several years of outpatient treatment some years ago, and no inpatient treatment history. He further noted that the claimant has had three years of college, reports enjoys reading, and that the consultative examination did not reveal any problems with concentration, attention, and memory.

(R. at 29-30) (internal citations omitted). From this evidence, the ALJ concluded that the residual functional capacity limitation of simple, repetitive tasks properly responded to Plaintiff's mental impairment. The Magistrate Judge agreed.

Having independently reviewed the ALJ's decision, the Court is persuaded that the ALJ properly considered Plaintiff's mental impairment when evaluating his residual functional capacity. Further, substantial evidence in the record supports the ALJ's ultimate residual functional capacity assessment. For that reason, the first part of Plaintiff's first Objection is overruled.

**2. The Magistrate Judge did not Err in Finding that the ALJ's Question to the Vocational Expert was Adequate**

Next, Plaintiff argues that the Magistrate Judge erred in concluding that the ALJ's question to the vocational expert at the hearing was adequate. (Doc. No. 23 at 3-5.) Plaintiff contends that the ALJ's hypothetical question did not convey his moderate difficulties maintaining concentration, persistence, and pace and that the ALJ's failure to explain why she omitted these difficulties violates the law. (Id.) Additionally, Plaintiff claims that the ALJ's question impermissibly failed to incorporate his "hand and reaching limitations." (Id. at 5.) The Court is not persuaded by these arguments.

Between the fourth and fifth steps of the evaluation process, the ALJ sometimes seeks advisory opinion testimony from a vocational expert. See Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002). At that point, "a vocational expert or specialist may offer testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work." 20 C.F.R. § 404.1560(b)(2); see also Russo v. Astrue, 421 Fed. App'x 184, 192 (3d Cir. 2011). The ALJ's "hypothetical question must reflect all of a claimant's impairments." Burns, 312 F.3d at 123 (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). If undisputed medical evidence of an impairment exists in the record, but is not incorporated into the ALJ's hypothetical question, "the expert's response is not considered substantial evidence." Id. (citing Wallace v. Secretary of Health & Human Serv., 722 F.2d 1150, 1155 (3d Cir. 1983)). But an ALJ is only required to incorporate a credibly established limitation; the hypothetical question need not include a claim that lacks foundation. Rutherford, 399 F.3d at 552.

At the hearing held on February 22, 2016, the ALJ asked the vocational expert the following question:

> Okay. I want you to assume an individual of Claimant's age, education, and work experience, having the following residual functioning capacity, being able to lift up to ten pounds, sit for six hours, stand and walk for two hours, occasional postural activities. No pushing or pulling with the lower extremities. No overhead reaching. Being limited to simple, repetitive tasks, with only occasional changes in the work setting. Could that individual return to Claimant's work?

(R. at 122-23.) In response, the vocational expert testified that while such an individual could not return to work as a mechanic, jobs existed in the national economy which that individual could perform.

Plaintiff now claims that the ALJ's hypothetical question did not properly convey his moderate difficulties maintaining concentration, persistence, and pace. The Court disagrees. As explained in the preceding section, in arriving at Plaintiff's residual functional capacity, the ALJ considered his moderate difficulties that resulted from his mood/anxiety disorder. While she agreed that the disorder caused his symptoms, she noted that the objective medical evidence in the record contradicted Plaintiff's statements regarding the severity of his symptoms. As a result, the ALJ examined the objective medical evidence and determined that Plaintiff could perform sedentary work so long as it was limited to simple, repetitive tasks. This was clearly reflected in the ALJ's hypothetical question to the vocational expert at the disability hearing.

Plaintiff also claims that the ALJ did not convey his "hand and reaching limitations" in the hypothetical question. But this is incorrect. For one, the ALJ's hypothetical question did in fact convey that the individual at issue could not engage in "overhead reaching." (R. at 122.) Furthermore, in her decision, the ALJ noted that "[t]he record does not document any problems with [Plaintiff's] hand, feet, or face." (R. at 27.) Instead, medical records show that although Plaintiff reported tingling in his hands, he has no issues lifting and carrying up to ten pounds. As evidenced above, the ALJ's hypothetical question clearly incorporated those limitations.

13

For these reasons, the Court agrees with the Magistrate Judge's holding that the ALJ properly conveyed Plaintiff's limitations and impairments in the hypothetical question to the vocational expert. As a result, the Court will overrule Plaintiff's first Objection.

**B. The Court will Overrule Plaintiff's Second Objection**

Finally, in his second Objection, Plaintiff argues that the Magistrate Judge erred in holding that the ALJ properly considered the opinion of Kathleen Mullin, M.D., a consultative medical examiner. (Doc. No. 23 at 5.) Plaintiff contends that the ALJ's residual functional capacity assessment conflicts with Dr. Mullin's opinion, but that the ALJ failed to explain this alleged contradiction. (Id.) The Court is not convinced by Plaintiff's contentions.

As the factfinder, the ALJ is specifically charged with the duty to evaluate all medical evidence in a disability insurance benefits case. See 20 C.F.R. §§ 416.945, 416.946(c). The ALJ—not a physician or consultant—makes the ultimate determination as to whether a claimant is disabled. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). According to the Third Circuit Court of Appeals, an ALJ may reject a physician's opinion where that opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques or where the opinion is inconsistent with other substantial evidence in the record. Fargnoli v. Halter, 247 F.3d 34, 43 (3d Cir. 2001). When considering the amount of weight to afford to a treating physician's opinion, the ALJ must consider the consistency of the opinion with the evidence in the record. 20 C.F.R. § 416.927(d)(2).

Here, Dr. Kathleen Mullin, M.D., examined Plaintiff for the purposes of his disability claim. In her decision, the ALJ summarized Dr. Mullin's medical opinion as follows:

> On April 25, 2014, following a consultative examination, Kathleen Mullin, MD, diagnosed diffuse musculoskeletal pain, and stated that symptoms are not suggestive of neuritis/radiculitis. It was noted that the claimant reported that he had a laminectomy in 2003 for a herniated disc at L4-L5, and that since then he has

14

> had chronic pain in his lumbar spine, cervical spine, and arms. Dr. Mullin observed that the claimant had a normal gait and stance, used no assistive devices, needed no help changing for the exam or getting on or off the exam table, and was able to rise from a chair without difficulty. In addition, Dr. Mullin reported that the claimant had mild spasm and tenderness over the thoracic area on the right, as well as no evidence of joint deformity, negative straight leg raise test bilaterally, and joints stable and nontender without redness, heat, or effusion. She also reported that no sensory deficit was noted, strength was 5/5 in the upper and lower extremities, and no muscle atrophy was present. In a medical source statement, Dr. Mullin reported that the claimant has a limited sedentary residual functional capacity.

(R. at 28) (internal citations omitted). Then, the ALJ explained that she afforded Dr. Mullin's opinion "great weight" because it was consistent with the record. (R. at 30.) Indeed, Dr. Mullin's assessment mirrored the opinions of other medical professionals cited. (See R. 26-30.)

Plaintiff argues that despite the ALJ's statement that she afforded great weight to Dr. Mullin's opinion, the residual functional capacity assessment actually contradicted Dr. Mullin's opinion. In addition, Plaintiff claims that the residual functional capacity assessment does not reflect Dr. Mullin's medical opinion that he can only use his hands occasionally and should be limited in terms of reaching. (Doc. No. 23 at 7.)

The ALJ's residual functional capacity assessment in no way conflicts with Dr. Mullin's medical opinion. In accordance with Dr. Mullin's opinion, the ALJ held that Plaintiff has a residual functional capacity to perform limited sedentary work. Further, the ALJ incorporated Dr. Mullin's opinion that Plaintiff has pain in his arms—she wrote that Plaintiff is limited to lifting and carrying up to ten pounds. Moreover, the ALJ cautioned that Plaintiff could not perform jobs that involved overhead reaching. Thus, Plaintiff's argument that the ALJ's residual functional capacity assessment contradicts Dr. Mullin's opinion lacks merit.

For these reasons, the Court agrees with the Magistrate Judge's finding that the ALJ's residual functional capacity assessment does not contradict Dr. Mullin's medical opinion. To the

contrary, the ALJ fully incorporated Dr. Mullin's opinion. As a result, the Court will overrule Plaintiff's second Objection.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's Objections to the R&R (Doc. No. 23) are overruled. The Report and Recommendation (Doc. No. 20) will be approved and adopted in its entirety. An appropriate Order follows.